UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUSTAVO PRIETO, | ) |
| | ) Case No. 09 C 2226 |
| Plaintiff, | ) |
| | ) Hon. Marvin E. Aspen |
| v. | ) |
| | ) |
| OFFICERS LOPEZ, VEGA, NEHNEVAY, | ) |
| and THE CITY OF CHICAGO HEIGHTS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Gustavo Prieto filed a six-count amended complaint against Defendants Officer Lopez, Officer Vega, Officer Nehnevay (collectively the "Officer Defendants"), and the City of Chicago Heights. He alleges excessive force (Count I), conspiracy to commit a civil rights violation (Count II), failure to prevent a civil rights violation (Count III), and false arrest (Count IV) under 42 U.S.C. § 1983 against the Officer Defendants. Prieto also alleges malicious prosecution under Illinois state law against the Officer Defendants (Count V) and respondeat superior liability against the City of Chicago Heights for malicious prosecution (Count VI). Presently before us is Defendants' motion for summary judgement on all claims. For the reasons stated below, we grant the motion in part and deny it in part.

I.  STATEMENT OF FACTS[1]

On the evening of January 30, 2008, Plaintiff Gustavo Prieto met up socially with Sheena Wardell, a woman he had met either that night or a few days before. (Def. Ex. C, Prieto Dep. at 39–41; Def. Ex. I, Dom. Batt. Police Rep. at 2.) Sometime before 3 a.m., Prieto drove Wardell to his home in Chicago Heights. (Def. Facts ¶¶ 10–11.) Prieto and Wardell went to Prieto's bedroom, where Prieto got into bed and Wardell sat on the corner of the bed. (*Id.* ¶¶ 12–13.) Before long, Wardell decided she wanted to leave and asked Prieto to drive her home; Prieto said he would not do so until the next morning. (*Id.* ¶ 15.) According to Wardell's later account to the police, she tried to leave, but Prieto grabbed her around the neck, slapped her, and told her she could not leave, insinuating that since Prieto had given her a ride earlier, she must now pay him back sexually. (*See* Def. Ex. F, Vega Dep. at 28–30; Def. Ex. I, Dom. Batt. Police Rep. at 2.) According to Prieto, he never touched or threatened Wardell in any way. (Def. Ex. C, Prieto Dep. at 145–48.)

In any case, Wardell eventually left Prieto's home, walked to the street corner, and paced back and forth in the middle of the street as she called 911 and requested police to come to Prieto's address for a domestic situation. (Def. Facts ¶¶ 21–22.) Officer Defendants Vega, Nehnevay, and Lopez, along with another officer, heard the 911 call and responded to Prieto's address. (*Id.* ¶ 24.) All were in uniform. (*Id.*) Vega arrived first and saw Wardell standing on

---

[1] The fact described are undisputed unless otherwise noted. We primarily rely on the parties Local Rule 56.1 statements of facts. Both sides objected to portions of the other's statement of facts, and Defendants filed a motion to strike portions of Plaintiff's 56.1 statement of additional facts and portions of Plaintiff's response to Defendants' 56.1 statement of facts. We have reviewed the objections and motion and will incorporate their arguments into our assessment of the facts. We will not issue a separate ruling for each statement of fact or on the motion to strike, which is denied as moot.

the corner outside Prieto's home; he spoke with her at that time. (*Id.* ¶ 25.) Wardell told Vega that when she attempted to leave Prieto's bedroom, Prieto grabbed her around the neck, slapped her, and told her she could not leave, and that Prieto was now sitting in the car parked in his driveway. (*See id.* ¶¶ 26–27.)

In the meantime, fearing that Wardell might break out the windows in his car—an act apparently performed on a prior occasion by a different female who was upset with Prieto—Prieto followed Wardell outside when she left his bedroom. (*Id.* ¶ 18.) Prieto went to his car in the driveway and got inside to sit with the heater on; it was cold outside. (*Id.* ¶ 19.) Prieto could not hear Wardell's conversation with the 911 operator or her conversation with Vega. (*Id.* ¶¶ 22, 28.)

Officers Nehnevay and Lopez arrived at the scene. (*See id.* ¶ 24.) After finishing his conversation with Wardell, Vega, with other officers, approached the car Prieto was sitting in and identified himself. (*Id.* ¶ 30.) Prieto rolled down the driver's side window slightly and asked, "What is your probable cause?" (*Id.* ¶ 32.) Vega and the officers ordered Prieto to exit his car. (*Id.* ¶ 36; Compl. ¶ 6.) Prieto did not like the officers' attitude and refused get out. (Def. Facts ¶¶ 33, 37.) Officer Vega radioed for Sergeant Miller to come to the scene and advise on the situation, which he did. (*Id.* ¶ 38.) At Miller's instruction, Lopez broke out the rear passenger window of Prieto's car and unlocked the vehicle. (*Id.* ¶ 39; Pl. Facts ¶ 19.)

Once Lopez unlocked the car, Vega, with Nehnevay assisting, opened the driver's side door and pulled Prieto out. (Def. Facts ¶ 43; Pl. Facts ¶ 21.) The next sequence of events is hotly disputed. According to Defendants, once out of the car, Prieto flailed his arms to avoid handcuffs, fell face-first to the ground without being touched, and was handcuffed by Vega and

3

Nehnevay after a brief struggle on the ground. (Def. Facts ¶¶ 44–47, 49.) According to Prieto, once out of the car, he lifted his hands in sign of surrender and said "I'm not resisting." (Pl. Facts ¶ 22.) In response, Officer Defendants either threw Prieto to the ground and then handcuffed him or vice versa. (*See* Def. Resp. to Pl. Facts ¶ 22.) Officer Defendants then, according to Prieto, kicked and punched Prieto while he was handcuffed and face-down on the ground. (*See* Pl. Facts ¶ 26.) Prieto could not see which officers allegedly kicked and punched him nor could he identify them by their voices. (Pl. Resp. to Def. Facts ¶ 50; Def. Facts ¶ 51.) Officer Defendants deny throwing, punching, or kicking Prieto. (*See* Ans. ¶¶ 9, 11 [Dkt. Nos. 27, 48].) At some point, Lopez came around the vehicle, from the passenger side to the driver's side, to assist Nehnevay and Lopez. (*See* Def. Facts ¶ 48; Pl. Resp. to Def. Facts ¶ 48.)

Once in custody, Prieto was taken to the police station. (*See* Pl. Facts ¶ 32.) While at the station, Prieto repeatedly asked to be taken to a hospital and was eventually taken to St. James Hospital where he received stitches to his nose for a wound he suffered when he struck the ground after being removed from his vehicle. (Def. Facts ¶ 57.) Wardell also came to the station, spoke there with Nehnevay about the incident, and signed a complaint for domestic battery. (*Id*. ¶ 59–60.)[2] Prieto was charged with domestic battery, resisting arrest, driving under

---

[2] Prieto argues that a question of material fact exists whether Wardell came to the police station to sign a complaint. (*See* Resp. at 3.) Nehnevay testified that Wardell signed the complaint at the station and conveyed to him the details of the incident. (Def. Ex. H, Nehnevay Dep. at 47, 50–53.) Prieto presents no evidence to the contrary. Instead, he points out that Nehnevay, Vega, and Lopez do not remember driving Wardell to the police station and Vega and Lopez do not remember seeing her there. (*See* Resp. at 3.) Even if we take these facts at face value and disregard Prieto's failure to cite to the record to support them, the facts simply do not contradict Nehnevay's testimony. Wardell could have been given a ride to the station by one of the other officers on the scene, such as Sergeant Miller, and just because Vega and Lopez did not see Wardell at the station does not mean she was not there, particularly when Nehnevay testified that she was. Thus, Nehnevay's testimony that Wardell came to the station and signed the

4

the influence, driving with a revoked license, and driving without insurance. (*See id.* ¶ 57; Compl. ¶ 14.)[3] The charges were eventually stricken off with leave to reinstate. (Lopez Ans. ¶ 16; *see* Def. Sur-Reply Exs. 1–4.)

II.     STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c)(2). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rely merely on allegations or denials in its own pleading" but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

---

complaint is undisputed.

[3] The parties present additional facts relating to the three traffic charges. (*See* Def. Facts ¶¶ 34, 58, 62–68; Pl. Facts ¶¶ 8–9, 14, 37.) We do not recount these facts because they are not material to our decision.

5

III.   ANALYSIS

Prieto alleges several Fourth Amendment claims: excessive force (Count I); failure to prevent the use of excessive force (Count III); and false arrest (Count IV). In addition, he claims that the Officer Defendants maliciously prosecuted him (Count V) and that the City of Chicago Heights is liable for the malicious prosecution (Count VI). Finally, he claims that the Officer Defendants conspired to violate his constitutional rights (Count II). We address each claim below.

   A.   Fourth Amendment Claims

"The Fourth Amendment protects the 'right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.'" *United States v. Jackson*, 598 F.3d 340, 346 (7th Cir. 2010) (quoting U.S. Const. amend. IV). It is uncontested that Prieto was arrested and thus seized within the meaning of the Fourth Amendment. The central question is whether that seizure was reasonable. Prieto raises three Fourth Amendment claims: false arrest, excessive force during an arrest, and failure to prevent the use of excessive force.

      1.   False Arrest (Count IV)

An arrest made with probable cause is reasonable. *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and Section 1983.") (citing *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009)). Probable cause exists "when the facts and circumstances that are known to [an officer] reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673,

679 (7th Cir. 2007). For example, when "a reasonably credible victim informs the police that someone has committed a crime, the police have probable cause to arrest the alleged culprit." *United States v. Hayden*, 353 Fed. App'x 55, 57 (7th Cir. 2009) (citing *Holmes*, 511 F.3d at 680; *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007)). In the context of a false arrest claim, an arresting officer need only have probable cause to arrest the suspect for some offense; probable cause at the time of arrest is not required for every offense eventually charged. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (citing *United States v. Williams*, 495 F.3d 810, 817–818 (7th Cir. 2007)). Under the collective knowledge doctrine, we impute one officer's knowledge to all other officers he is in communication with regarding a suspect. *Id.* (citing *United States v. Hensley*, 469 U.S. 221, 232–33, 105 S. Ct. 675, 682 (1985); *United States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000)).

Here, the Officer Defendants had probable cause to arrest Prieto for domestic battery. The victim, Sheena Wardell, placed a 911 call to request the police, and when Vega arrived she told him that Prieto had grabbed her around the neck, slapped her, and attempted to prevent her from leaving his bedroom. She identified Prieto as the man sitting in the car in the driveway. Prieto presents no evidence that Wardell was not reasonably credible, and thus her report alone supports probable cause for domestic battery. And because probable cause need only exist for some offense to defeat a claim of false arrest, the probable cause to arrest Prieto for domestic battery alone supports summary judgment on Count IV.[4]

---

[4] Prieto argues that questions of fact exist to prevent summary judgment on his false arrest claim, namely whether Wardell signed the complaint at the police station after Prieto's arrest and whether she conveyed to Nehnevay the incident as it is recorded in the police report. (Reply at 3.) This argument is unavailing for two reasons. First, these facts are not in dispute. *See supra* note 2. Second, these facts are not relevant to our probable cause analysis because

7

2. Excessive Force and Failure to Intervene (Counts I and III)

Even if a police officer has probable cause for an arrest, the officer may not use excessive force in making the arrest. *See Graham v. O'Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989). We analyze a claim of excessive force during an arrest under the "objective reasonableness" standard of the Fourth Amendment. *Id*. at 394, 1871. We balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396, 1871 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699 (1985)). "[P]olice officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to so" can also be held liable under Section 1983 for their failure to intervene. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

Prieto claims that the Officer Defendants used excessive force when arresting him, failed to prevent the use of excessive force, or both. According to Prieto, once he was removed from his vehicle, and despite showing no resistence, he was thrown to the ground, and then, while lying face-down on the ground with his hands cuffed behind his back, he was repeatedly kicked and punched. These actions taken against an compliant suspect, if true, would clearly constitute excessive force.

---

they occurred after Prieto's arrest. At the time of the arrest, the Officer Defendants' knowledge included the 911 call and Wardell's conversation with Vega at the scene. At that time, the complaint had not yet been signed and Nehnevay had not yet filled out his police report, and therefore facts relating to those documents are irrelevant to our probable cause analysis.

8

Defendants outline a two-part argument in their motion for summary judgment. First, they deny beating Prieto, and we infer that they deny that any beating took place at all, whether by the Officer Defendants or other officers who may have been on the scene. Essentially, they claim that Prieto is lying. Our question, then, is whether Prieto has presented enough evidence from which a reasonable jury could conclude that his version of events is true. He has.

Prieto testified in his deposition that he was thrown to the ground, punched, and kicked. Although Defendants discount Prieto's version of the facts by exposing alleged contradictions, a reasonable jury could believe his testimony. The inconsistencies pointed out by Defendants are either not material[5] or are not true inconsistences.[6] In addition, records of Prieto's hospital trip show he suffered a facial wound during his arrest consistent with his story, (*see* Reply Ex. 1)—although the wound is equally consistent with Defendants' story. In this typical he-said-she-said scenario, with little factual evidence other than testimony supporting either side, we see no reason to take this question away from the jury at this time. A reasonable jury could conclude

---

[5] For example, Prieto's story is inconsistent about whether he was handcuffed before or after he hit the ground. (*Compare* Def. Ex. C, Cardenas Dep. at 93–94 (recounting handcuffs being applied after he was on the ground) *with* Pl. Facts ¶ 22 (stating that he was cuffed before hitting the ground).) The thrust of Prieto's allegations is that he was thrown to the ground and needlessly beaten; all his accounts are consistent in that regard.

[6] For example, a medical record not authored by Prieto states that he suffered an injury when he "fell" face-first to the ground, as opposed to being "thrown" to the ground. (*Compare* Reply Ex. 1, Medical Records at 7, 12–13 (stating in reference to Prieto's injury: "Fell face first–>facial contusion," "Nosebleed s/p fall," and "Nosebleed – s/p fell getting out of car") *with* Def. Ex. C, Cardenas Dep. at 80 (stating that an officer "threw me to the floor").) First, because Prieto did not author the record, it is not part of his account and cannot show that his account is internally inconsistent. Second, a reasonable jury could conclude that the hospital record is consistent with Prieto's story because, even if thrown by the officers, Prieto did fall face-first to the ground.

that Prieto was needlessly thrown to the ground, kicked, and punched, and therefore that he was the victim of excessive force.

Defendants argue that even if a jury believed Prieto's story, the Officer Defendants cannot be held liable because Prieto has offered no evidence that those particular officers administered the alleged throw, punches, and kicks. It is true that Prieto was face-down during the alleged beating and thus could not see which officers participated. Further, Prieto testified that he could not identify the voices of his alleged abusers. Still, drawing all reasonable inferences in Prieto's favor, there is enough evidence from which a reasonable jury could conclude that the Officer Defendants either participated in the alleged beating or failed to intervene despite a reasonable opportunity to do so.

On this point, our case is essentially identical to *Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000). In *Miller*, the plaintiff, suspected of armed robbery, was ordered to the ground and handcuffed by one officer. *Id*. at 492–93. According to the plaintiff, while lying face-down, he was kicked, punched, and stepped on. *Id*. at 493. Two officers were on the scene at the time, with a third close by. *See id.* Because the plaintiff was face-down, he could not identify which officer or officers kicked, punched, and stepped on him. *Id.* The district court granted summary judgment for the officers on the plaintiff's Section 1983 excessive force claim, reasoning that the plaintiff had no proof of which officer applied the allegedly excessive force. *Id*. The Seventh Circuit reversed. *Id*. at 495. First noting that "'[a]n official satisfies the personal responsibility requirement of § 1983 if he acts *or fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights,'" the Court stated that based on the plaintiff's affidavit testimony, "whichever officer was not directly responsible for the beating was idly standing by."

*Id.* (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). The Court held that the plaintiff's testimony was sufficient for his claim to survive summary judgment. *Id*.

In our case, it is undisputed that Vega and Nehnevay initially removed Prieto from the car and that Lopez came around the car to assist them after he broke the passenger-side window. If a jury believes Prieto's testimony about being thrown down, punched, and kicked, it would be reasonable to infer that Vega or Nehnevay was the thrower, with the other standing idly by, and that Vega, Nehnevay, or Lopez (or some combination) was the kicker and puncher, with the others standing idly by. In any scenario, if a jury believes Prieto's version of the facts, the Officer Defendants would be liable for either excessive force or the failure to intervene.[7] Accordingly, we deny Defendants' motion on Counts I and III.

B. Malicious Prosecution Claims

Prieto makes two malicious prosecution claims. First, in Count V, he claims that the Officer Defendants maliciously prosecuted him under Illinois state law by initiating the charges for domestic battery, resisting arrest, driving under the influence, driving with a revoked license, and driving without insurance. Second, in Count VI, he claims that the City of Chicago Heights is liable under respondeat superior for the Officer Defendants' malicious prosecution of Prieto.

To make out a claim of malicious prosecution under Illinois law, Prieto must show: "(1) the commencement or continuance of an original criminal complaint or civil judicial

---

[7] A final scenario involves a very quick beating that had ceased before Lopez was able to move around to the driver's side of the vehicle. If a jury believed this scenario, it might also reasonably conclude that Lopez both was not involved in the beating and had no reasonable opportunity to intervene, and thus he would not be liable for either Count I or III. It is not for us to decide amongst the various reasonable factual scenarios. We leave that determination for a jury.

11

proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E. 2d 1238, 1242 (1996) (quoting *Joiner v. Benton Cmty. Bank*, 82 Ill. 2d 40, 45, 411 N.E. 2d 229 (1980)). The absence of any element bars the claim. *Id*. To satisfy the second element the plaintiff must show that the proceedings were terminated in a manner indicative of innocence. *Cult Awareness Network*, 177 Ill. 2d 267, 277–80, 685 N.E. 2d 1347 (1997); *Swick*, 169 Ill. 2d at 512, 663 N.E. 2d at 1242.

Defendants raise in their Reply the argument that Prieto has produced no evidence that the underlying proceedings—here, the charges of domestic battery, resisting arrest, driving under the influence, driving without insurance, and driving with a suspended license—were terminated in his favor. (Reply at 9–10.) Ordinarily we will not consider an argument raised for the first time in a Reply because the nonmoving party has not had an opportunity to respond. *See United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). But in this case, because we believed the issue to be important, we provided Prieto with a chance to respond by ordering supplemental briefing. Our order stated in relevant part: "The parties shall address, with appropriate factual support, whether the proceedings underlying Plaintiff's malicious prosecution claim were terminated in Plaintiff's favor." (May 13, 2010 Order.) Prieto missed the deadline for filing his supplemental brief but the next day filed a Sur-Response to Defendant's motion to strike. Based on the timing and content of the Sur-Response—Prieto states, essentially, that he has nothing to add to his original Response to the motion to strike—we infer that it was prompted by our order requesting supplemental briefs.

12

But Prieto—or rather his attorney—must not have read our order because the Sur-Response not only does not address the issues we ordered him to address, but it appears to relate to a different motion than the one on which we ordered supplemental briefing. In any case, we gave Prieto an opportunity to respond to Defendants' argument that the proceedings underlying his malicious prosecution claim were not terminated in his favor, and he failed to meaningfully respond. By doing so, he abandoned an element of malicious prosecution on which he bears the burden of proof and thus effectively abandoned Count V. *See Keck Garret & Assocs. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008); *Palmer v. Marion Cty*, 327 F.3d 588, 597–98 (7th Cir. 2003).

For completeness, we observe that, on the record before us, the underlying proceedings do not appear to have been terminated in Prieto's favor. As stated above, to satisfy this element, Prieto needs to show more than that the case against him was dismissed; he must show that it was dismissed in a manner indicative of innocence. *Cult Awareness Network*, 177 Ill. 2d at 277–280, 685 N.E. 2d 1347; *Swick*, 169 Ill. 2d at 512, 663 N.E. 2d at 1242. According to the court records attached to Defendants' Sur-Reply, all of the charges against Prieto were stricken off with leave to reinstate, or SOL'd. (Sur-Reply Ex. 1–4.) The domestic battery charge was SOL'd on March 6, 2008, apparently because Wardell, the complaining witness, failed to show

up in court. (Sur-Reply Ex. 1–3.)[8] The remaining charges were SOL'd on May 29, 2008, because the reporting officers did not show up in court. (Sur-Reply Ex. 4.)[9]

As with any disposition, whether an SOL is indicative of innocence depends on the factual circumstances of the dismissal. *Swick*, 169 Ill. 2d at 513–14, 663 N.E. 2d at 1243. The plaintiff bears the burden of producing evidence to support a finding that the termination was indicative of innocence. *Id.* Here, as already noted, Prieto presents no evidence regarding the termination of the underlying proceedings. Further, the evidence presented by Defendants shows that the proceedings were terminated because essential witnesses failed to show up in court. Without more, a reasonable jury could not conclude that the charges against Prieto were terminated in a manner indicating his innocence. Thus, Count V fails as a matter of law.

Count VI alleges that the City of Chicago Heights is liable under respondeat superior for the malicious prosecutions charged in Count V. "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS § 10/2-109. Because plaintiff can prove no set of facts that support Count V, Count VI also fails as a matter of law. Accordingly, we grant Defendants' motion on Counts V and VI.

C.  Count II Conspiracy

---

[8] We say "apparently" because the document Defendants cite to support this assertion—a transcript of the court proceedings dismissing the domestic battery charge—appears to be incomplete. (*See* Sur-Reply Ex. 3.) Nevertheless, other documents clearly show that Count 1, the domestic battery charge, was stricken off with leave to reinstate.

[9] For the traffic offenses, reporting officer Lopez had moved to Arizona and was no longer employed by the Chicago Height Police Department at the time of the court hearing. (*See* Sur-Reply Ex. 4; Def. Facts ¶ 72.)

Finally, Prieto alleges in Count II that the Officer Defendants conspired to violate his constitutional rights in violation of 42 U.S.C. § 1983. From the face of the complaint, Prieto appears to claim that the officers conspired to use excessive force, although the complaint notably does not limit the alleged conspiracy as such. (*See* Compl. ¶ 21 ("[E]ach of the Defendants committed overt acts, including, but not limited to an unjustifiable beating . . . .").) But Prieto abandons the excessive force conspiracy theory in his Response. (*See* Resp. at 10–11.) By failing to develop this argument, Prieto not only fails to provide any evidence from which a reasonable jury could find a conspiracy to commit excessive force, but he also waives that argument. *See Keck Garret & Assocs.*, 517 F.3d at 487; *Palmer*, 327 F.3d at 597–98.

Instead, Prieto develops the argument that the officers conspired to maliciously prosecute Prieto by doctoring police reports, filing trumped up charges against him, and lying in their depositions. (*See* Resp. at 10–11.) Malicious prosecution is a creature of state law claim and not a federal constitutional violation actionable under Section 1983, as Prieto has pled his conspiracy claim. *See Johnson v. Saville*, 575 F.3d 656, 662 (7th Cir. 2009); *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). Even if we interpret Prieto's conspiracy claim to be a state law civil conspiracy claim, it fails because a civil conspiracy only exists when some underlying tort has been committed. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62–63, 645 N.E.2d 888, 894 (1994); *see also Cult Awareness Network*, 177 Ill. 2d at 267, 685 N.E. 2d at 1350. We have already held that Defendants did not maliciously prosecute Prieto. Thus, they also did not conspire to maliciously prosecute him. Accordingly, we grant Defendants' motion on Count II.

III.  CONCLUSION

For the reasons stated above, we grant Defendants' motion on Count II and Counts IV through VI, but deny it on Counts I and III. It is so ordered.

_____
MARVIN E. ASPEN
United States District Judge

Dated: June 23, 2010